UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXUM INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SULLIVAN VINEYARDS CORPORATION, et al.,<br><br>Defendants. | Case No. 16-cv-03611-HSG   (JCS)<br><br>**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 24 |

## I.  INTRODUCTION

Plaintiff Maxum Indemnity Company ("Maxum") moved for default judgment (the "Motion") against Defendants Sullivan Vineyards Corporation ("SVC"), Kelleen Sullivan, and Ross Sullivan.  Maxum, which issued an insurance policy to SVC in August 2015, initiated this action seeking a declaratory judgment that it has no duty to defend or indemnify Defendants in an underlying lawsuit filed by former SVC employees.  Defendants waived service of the Summons and Complaint through counsel, but did not respond to the Complaint or otherwise appear in this action.  After the Clerk entered default, Maxum filed the Motion.  The Motion was referred to the undersigned magistrate judge on September 16, 2016, for a report and recommendation.  A hearing was held on October 28, 2016.  Maxum subsequently submitted evidence regarding the citizenship of the parties.  For the reasons stated below, the undersigned recommends that the Motion be GRANTED.

## II.  BACKGROUND

### A.  The Complaint

On June 27, 2016, Maxum filed the Complaint seeking a declaratory judgment under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.  *See* Compl. for Declaratory J. and Rescission (the "Complaint," dkt. no. 1) ¶ 17.  Maxum is an insurance company

headquartered in Alpharetta, Georgia, and incorporated in the State of Delaware. *Id.* ¶ 15. Maxum transacts business in California. *Id.* SVC is a California corporation located in Rutherford, California. *Id.* ¶ 16. Kelleen Sullivan is a shareholder and director of SVC. *Id.* ¶ 1. Ross Sullivan is SVC's President. *Id.* Although the first event alleged occurred in May 2015, the undersigned begins with a review of the insurance application submitted by SVC to Maxum, which Maxum has referred to as "the Proposal," and the insurance policy (the "Policy") that Maxum issued to SVC shortly thereafter.

### 1. The Insurance Proposal and Policy

On August 26, 2015, SVC submitted the Proposal to Maxum, which was signed by SVC Vice President of Finance Teresa Sullivan (who is not related to Kelleen, Ross, or the rest of the Sullivan family that founded and continues to own SVC and related entities bearing the Sullivan name). *Id.* ¶¶ 33–34, 47. The Complaint primarily focuses on SVC's responses to questions 13.f., 22, and 29 in the Proposal. Question 13.f. asked: "Does the 'Insured Entity' anticipate any consolidation, divestment, acquisition, tender offer or merger?" *Id.* ¶ 35. Question 22 asked: "Is any 'Insured' aware of any fact, circumstance or situation involving any 'Insureds' that might reasonably be expected to result in a 'Claim' as defined in the Directors, Officers and Corporate Liability Insurance Coverage Section?" *Id.* ¶ 38. Question 29 asked: "Is any 'Insured' aware of any fact, circumstance or situation involving any 'Insureds' that might reasonably be expected to result in a 'Claim' as defined in the Employment Practices Liability Coverage Section?" *Id.* ¶ 42. SVC responded "no" to each of these questions. *Id.* ¶¶ 36, 39, 43. Those responses were false. *Id.* ¶¶ 37, 40, 44, 95.

The Proposal contained prior knowledge exclusions for questions 22 and 29, which stated that Maxum would not be liable for any loss connected to a claim made against SVC "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any lawsuit . . . fact, circumstance, or situation set forth or that should have been set forth in" SVC's responses to questions 22 and 29. *Id.* ¶¶ 41, 45. The Proposal also stated that SVC "agree[s] that the Proposal Form and any material submitted herewith shall be considered attached to and a part of the 'Policy'." *Id.* ¶ 46; *see also id.* ¶¶ 62–63 (alleging that the Policy's common

2

terms and conditions incorporated the Proposal into the Policy).  Maxum issued the Policy to SVC on August 31, 2015, "in reliance on the truthfulness of the statements and representations in the Proposal."  *Id.* ¶¶ 48–49.  The twelve-month policy period started retroactively on August 20, 2015.  *Id.* ¶¶ 4, 50.

The Policy provided management liability insurance to SVC and its directors, officers, and employees.  *Id.* ¶¶ 51–54.  Specifically, the Directors, Officers and Corporate Liability ("D&O") provisions provided SVC with corporate insurance, corporate indemnification insurance, and liability insurance for its directors and officers; however, this coverage excluded any claim "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any past, present or future actual or potential employment relationship."  *Id.* ¶¶ 56–57.  The provisions governing SVC's Employment Practices Liability ("EPL") coverage contained an exclusion for litigation prior to and pending on the Policy's effective date of August 20, 2015.  *Id.* ¶¶ 59–61.  That provision barred coverage for claims:

> based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving: (1) any prior or pending litigation, administrative or arbitration proceeding, or investigation as of the 'Prior and Pending Litigation Date' . . . , or (2) any fact, circumstance, situation, transaction or event underlying or alleged in such litigation, administrative or arbitration proceeding.

*Id.* ¶ 59.  EPL coverage was also subject to the prior knowledge exclusion that applied to question 29 of the Proposal.  *Id.*  The Policy was also subject to a change in control provision that excluded coverage for wrongful acts occurring after "more than 50% of the ownership of SVC is transferred or sold."  *Id.* ¶ 64.  The Policy provided a $500,000 aggregate claim limit subject to retentions of $25,000 for D&O claims and $75,000 for EPL claims.  *Id.* ¶ 55.

### 2. Events Preceding the Proposal's Submission

On May 13, 2015, more than three months before SVC submitted the Proposal, Kelleen Sullivan filed for divorce from Stephen Finn in Colorado state court.  *Id.* ¶ 24.  At the time, Finn was SVC's majority shareholder, owning nearly 60 percent of the company.  *Id.* ¶ 22.  Kelleen Sullivan was then an SVC director and minority shareholder.  *Id.* ¶ 23.

Five days later, SVC requested an insurance quote from Maxum.  *Id.* ¶ 30.  At that time,

1    SVC did not have comparable insurance. *Id.* ¶ 31. In late May, Maxum issued an insurance quote
2    to SVC that was contingent upon Maxum's receipt of a completed and signed proposal. *Id.* ¶ 32.
3            On June 3, 2015, Kelleen Sullivan moved to enjoin Finn from selling any of SVC's
4    property or assets. *Id.* ¶ 25. The Colorado court granted the motion on June 9, 2015. *Id.* ¶ 26.
5            On August 4, 2015, SVC filed an Ex Parte Application in the Superior Court of California,
6    County of Napa, seeking a Court order that consummated the sale of SVC and related assets.
7    *Id.* ¶¶ 27–29. The Application asserted that, due to the Colorado court's injunction, Finn was
8    "restrained from transferring, encumbering, concealing or in any way disposing of" SVC and
9    related entities and assets. *Id.* ¶ 29. The Application further asserted that SVC was "rapidly
10   approaching insolvency" and, "[a]bsent an immediate source of cash by loan, capital infusion or
11   sale . . . , SVC will be in a negative cash position as of August 16, 2015." *Id.* (emphasis omitted).
12   The Application also claimed that a local vintner had made a bona-fide offer to purchase SVC and
13   its related assets that would provide a substantially greater return for SVC, its partners, and its
14   shareholders compared to permitting SVC to become insolvent or enter foreclosure. *Id.*

### 3. Events After SVC Submitted the Proposal

16           On September 8, 2015, SVC filed a petition for a workplace-violence restraining order
17   against Kelleen Sullivan in California Superior Court, County of Napa. *Id.* ¶¶ 84–85. The petition
18   stated that four SVC employees—Angelica De Vere, Elizabeth Matulich, Trinity Scott, and Sonya
19   Grabski—needed protection from Kelleen Sullivan. *Id.* ¶ 86. The petition was accompanied by
20   declarations from each of those employees. *Id.* ¶¶ 88–96. Those declarations included
21   descriptions of events and altercations, some of which were alleged to have occurred on June 22,
22   July 25, August 22, and August 24, 2015. *Id.* ¶¶ 91–92. Attached to Scott's declaration was an
23   email sent by her to De Vere (SVC's CEO) and Teresa Sullivan on August 24. *Id.* ¶ 92. The
24   email described an altercation between Scott and Kelleen Sullivan that occurred two days earlier.
25   *Id.* The allegations underlying the petition occurred and were made known to Teresa Sullivan
26   prior to her submission of the Proposal. *Id.* ¶ 95. The petition was also concealed by SVC from
27   Maxum until January 2016. *Id.* ¶ 96.
28           On November 2, 2015, SVC's insurance broker informed Maxum that SVC's ownership

had changed due to the divorce proceedings in Colorado. *Id.* ¶¶ 65–66.

On December 31, 2015, De Vere, Teresa Sullivan, Grabski, Matulich, and Scott (the "Former Employees") filed a lawsuit against SVC, Kelleen Sullivan, and Ross Sullivan asserting several employment-related claims. *Id.* ¶¶ 97–99. The Former Employees alleged multiple instances of workplace harassment by Kelleen Sullivan, including events that occurred during April, June, and July 2015. *Id.* ¶ 99. It alleged that they were terminated in retaliation for the declarations and testimony that each had provided in SVC's August 4 Ex Parte Application seeking court permission to sell SVC. *Id.* ¶ 100. It also alleged that, when Kelleen Sullivan obtained a controlling interest in SVC on October 7, 2015, De Vere was immediately fired. *Id.* ¶ 101. The other Former Employees were constructively terminated on October 27, 2015. *Id.* ¶ 102.

On January 19, 2016, SVC's insurance broker informed Maxum that SVC wanted to rewrite the policy "as of October 8, 2015 in light of the change in ownership." *Id.* ¶¶ 67–68. Maxum responded, providing SVC with two options: cancel the Policy in its entirety or continue the Policy through "a natural run-off." *Id.* ¶¶ 69–70. Both options included writing a new "go forward policy" that would be effective on October 8, 2015, and subject to additional exclusions. *Id.* Pursuant to its request for the go forward policy, SVC submitted a new proposal to Maxum. *See id.* ¶¶ 69, 73. In its January 19 email to SVC's insurance broker, Maxum requested clarifications regarding that new proposal. *Id.* ¶ 69.

Two days later, SVC's insurance broker informed Maxum that SVC wanted to allow the Policy to go through the natural run-off and add the go forward policy. *Id.* ¶¶ 71–72. In response, Maxum stated that it had received another new proposal from SVC. *Id.* ¶¶ 73–74. Maxum expressed concern that the first new proposal submitted by SVC did not mention a potential workplace violence and wrongful termination claim that SVC had identified in the second new proposal. *Id.* Maxum also stated that it was "not comfortable offering the terms previously provided and they are no longer valid." *Id.*

On February 5, 2016, the Former Employees filed an amended complaint in their lawsuit against Defendants. *Id.* ¶¶ 103–04. Their amended complaint was substantially similar to the

5

complaint that they filed in December 2015. *Id.* That same day, SVC notified Maxum of the lawsuit and requested insurance coverage under the Policy. *Id.* ¶¶ 105–06. Six days later, Maxum informed SVC's insurance broker that Maxum would not issue a new insurance policy to SVC. *Id.* ¶¶ 81–82.

On March 16, 2016, Maxum sent a letter informing SVC's attorney, Peter Simon, that Maxum intended to rescind the Policy. *Id.* ¶¶ 107–08. Through Simon, SVC rejected the rescission offer, and requested full coverage under the Policy up to the $500,000 limit for the lawsuit filed by the Former Employees. *Id.* ¶¶ 109–10.

### 4. Causes of Action

Maxum alleged five causes of action in the Complaint. In the Motion, Maxum requests declaratory judgment on Counts II and III, "including a declaration that Maxum has no duty to defend or indemnity [*sic*] Defendants in the underlying action."[1] *See* Am. Mot. for Declaratory J., dkt. no. 24, at 2.

In Count II, Maxum claimed that it is entitled to a judgment declaring that, under the Policy's exclusion of prior and pending litigation, Maxum is not obligated to provide Defendants with insurance coverage for the Former Employees' lawsuit. *Id.* ¶ 130. Under this theory, the Former Employees' lawsuit—specifically their retaliation claim—arose as a result of the divorce proceeding and the Ex Parte Application seeking court permission to sell SVC. *Id.* ¶¶ 127–28.

Maxum claimed in Count III that it is entitled to a judgment declaring that it is not obligated to provide SVC with insurance coverage for the Former Employees' lawsuit under the Policy's prior knowledge exclusion. *Id.* ¶ 144. Maxum has asserted that the Proposal asked SVC if it knew of any fact or circumstance that might result in an employment liability claim. *Id.* ¶ 133. Maxum has further asserted that SVC falsely denied such knowledge and, in so doing, failed to disclose employee complaints and allegations that Kelleen Sullivan had harassed SVC employees before the Proposal was submitted. *Id.* ¶¶ 134–38.

---

[1] Count I requested a declaration that the policy was void *ab initio*. Count IV requested a declaration that the D&O provisions barred Defendants from coverage for the Former Employees' lawsuit. Count V requested a declaration that the change of control provision barred Defendants from coverage for the Former Employees' lawsuit.

### B. Service and Entry of Default

On June 28, 2016, the Clerk issued a summons to Defendants. Clerk's Summons, dkt. no. 7. On July 11, 2016, defense counsel executed and returned waivers of service for each Defendant. *See* dkt. nos. 12–14. Maxum filed the waivers three days later. *See id.* Defendants have since failed to answer the Complaint or otherwise appear. The Clerk filed an entry of default against Defendants on September 9, 2016. Clerk's Not. of Entry of Default, dkt. no. 20. On September 13, 2016, Maxum served a notice of default on Defendants by mail. *See* dkt. no. 21.

### C. The Motion

Also on September 13, 2016, Maxum moved for default judgment. *See* Mot. for Default J., dkt. no. 22. Judge Gilliam referred the Motion to the undersigned magistrate judge for a report and recommendation. *See* dkt. no. 23. On September 19, 2016, Maxum filed an amended motion. *See* Am. Mot. for Default J. As described above, Maxum moves for an entry of default judgment against Defendants on Counts II and III of the Complaint. Mem. of P. & A., dkt. no. 22-1, at 6.

## III. ANALYSIS

### A. Preliminary Considerations

#### 1. Jurisdiction

When entry of judgment is sought against defendants who have failed to plead or otherwise defend, a district court has the affirmative duty to determine whether it has jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). In the Complaint, Maxum asserted the existence of diversity jurisdiction. Compl. ¶ 19 (citing 28 U.S.C. § 1332). Maxum has properly alleged that the amount in controversy exceeds $75,000. *Id.* ¶ 19; *see also id.* ¶ 109. Maxum has alleged that it is a Delaware corporation with its principal place of business in the State of Georgia. *Id.* ¶ 15. Maxum has also alleged that defendant SVC is a California corporation. *Id.* ¶ 16. After the hearing, Maxum submitted evidence that defendants Kelleen Sullivan and Ross Sullivan are citizens of California. *See* Decl. of Dawn A. Silberstein, dkt. no. 30, ¶ 9 (certifying on knowledge and belief that Kelleen Sullivan and Ross Sullivan are citizens of California); *see also* Silberstein Decl. Exs. A–D, dkt. nos. 30-1 to -4. Accordingly, there is complete diversity among the parties.

///

### 2. Adequacy of Service

A district court must also determine the adequacy of service of process on a motion for default judgment. *See Bank of the West v. RMA Lumber Inc.*, No. 07–6469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). The Federal Rules of Civil Procedure permit service on individuals and corporations within the United States by delivering a copy of the summons and the complaint to an "agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C), (h)(1)(B).

SVC retained Simon as counsel to represent it in the Former Employees' lawsuit against Defendants. *See* Compl. Ex. R, dkt. no. 1-4 at 57–58 (letter from Simon to Maxum's counsel stating that Defendants "are proceeding to defend the case" brought by the Former Employees). Maxum mailed a copy of the Summons and the Complaint to Simon along with a waiver of service for each Defendant. *See* dkt. nos. 7, 12–14. Simon returned an executed waiver for each Defendant to Maxum's counsel. *See* dkt. nos. 12–14. Maxum then filed those waivers with the district court. *See id.* Because Defendants retained Simon to represent them in a related suit and Simon responded to Maxum for each Defendant as their counsel and waived service of process on their behalf, the undersigned concludes that service was proper under the Federal Rules of Civil Procedure. *See Damron v. Herzog*, 67 F.3d 211, 214 (9th Cir. 1995).

### B.   Legal Standard for Entry of Default Judgment

After default has been entered against a party, a district court may grant an application for default judgment in its discretion. *See* Fed. R. Civ. P. 55(b)(2). If the Court is satisfied that it has jurisdiction and that service of process upon the defendant was adequate, it then considers several factors in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The court takes all factual allegations in the Complaint, other than allegations regarding damages, as true. *See TeleVideo Sys., Inc. v.*

1  *Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559
2  F.2d 557, 560 (9th Cir. 1977)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one
3  relating to the amount of damages—is admitted if a responsive pleading is required and the
4  allegation is not denied.").

### C. *Eitel* Factors

The first factor established by the Ninth Circuit in *Eitel* considers whether the plaintiff would be prejudiced by denial of default judgment. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1054 (N.D. Cal. 2010). If the Court denies Maxum's request for default judgment, Maxum will be left without a remedy. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002). Accordingly, this factor weighs in favor of entry of default judgment.

Likewise, factors two and three support Maxum's request for declaratory relief. Those factors, "the merits of plaintiff's substantive claim" and "the sufficiency of the complaint," are intertwined where, as here, the case has not advanced beyond the pleading stage and default has been entered against Defendants. *See TeleVideo Sys.*, 826 F.2d at 917–18. In Counts II and III, Maxum requests declaratory relief under the terms of the Policy. For the Court to issue declaratory judgment, Maxum must set forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties.

In Count II, Maxum has claimed that the Defendants are barred from coverage for the Former Employees' lawsuit under the Policy's prior and pending litigation exclusion. This exclusion bars coverage for claims arising from facts or circumstances underlying litigation that preceded the Policy's effective date. *See* Compl. ¶ 59. Maxum has alleged that the Former Employees have asserted a retaliation claim based on the declarations that the Former Employees filed in support of the Ex Parte Application to sell the company that was filed by SVC on August 4, 2015. *See id.* ¶¶ 27–29, 59, 127–30. Thus, Maxum has alleged facts—and supported those allegations with exhibits—demonstrating that the Former Employees' lawsuit arises from litigation preceding the Policy's effective date of August 20, 2015.

Maxum has also claimed in Count III that the Defendants are barred from coverage for the

1    Former Employees' lawsuit under the prior knowledge exclusion. This exclusion provides that
2    Maxum is not liable for any claim under the EPL Section arising from a fact, circumstance, or
3    situation that should have been set forth in the Proposal. *See id.* ¶ 45. Maxum has alleged that
4    SVC falsely answered the question in the Proposal that would have alerted Maxum to the facts
5    underlying the Former Employees' lawsuit against Defendants, namely Kelleen Sullivan's alleged
6    harassment of those employees from June to August 2015. *See id.* ¶¶ 132–44.

7    In sum, Maxum has alleged facts demonstrating that there is no coverage for the
8    underlying action.

9    Maxum has also established that there is a controversy between the parties regarding the
10   rights and duties of the parties with respect to those exclusions. By letter, Maxum informed
11   Defendants that it had denied them coverage for the Former Employees' action. *Id.* ¶¶ 107–08;
12   *see also* Compl. Ex. Q, dkt. no. 1-4 at 52. Defendants responded that they did "not accept
13   Maxum's offer to rescind the policy" and defense counsel "encourage[d] Maxum to simply turn
14   over the $500,000 policy limits, at which point [Defendants] would release Maxum from
15   liability." *See* Compl. Ex. R, dkt. no. 1-4 at 57–58; *see also* Compl. ¶¶ 109–110. Thus, through
16   these and other allegations, Maxum has made prima facie claims for declaratory judgment on
17   Counts II and III. The undersigned therefore finds that these factors favor granting default
18   judgment.

19   The fourth factor, the sum of the money at stake, weighs in favor of entry of default
20   judgment. The amount of money at stake under the policy—$500,000—is significant, but not
21   disproportionate to the issue in dispute. Declaratory judgment would prevent Defendants from
22   recovering policy proceeds to defend, settle, or satisfy a judgment in the lawsuit brought by the
23   Former Employees. The undersigned therefore finds that this factor favors entry of default
24   judgment.

25   Factors five and six also favor Maxum. Defendants waived service through counsel, then
26   failed to respond to the Complaint or otherwise appear in this action. Defendants were also served
27   with the notice of default. Thus, there is no indication that their default is due to excusable neglect
28   and, because the allegations in the Complaint are taken as true, there is no dispute of material fact.

*See TeleVideo Sys.*, 826 F.2d at 917–18.

Finally, the public policy favoring the resolution of disputes on the merits is a neutral factor. Defendants' failure to answer the Complaint "makes a decision on the merits impractical if not impossible." *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005). It therefore does not preclude entry of default judgment. Thus, on balance, the *Eitel* factors weigh in favor of granting default judgment on Counts II and III.

## IV.  CONCLUSION

For the reasons stated above, the undersigned recommends that the Court GRANT Maxum's Motion for Default Judgment. The undersigned further recommends that the Court require Maxum to serve a copy of this Report on Defendants, and withhold judgment until fourteen days after service to allow Defendants an opportunity to object to this Report. *See Automattic Inc. v. Steiner*, 82 F.Supp.3d 1011, 1016 (N.D. Cal. 2015) (noting that although 28 U.S.C. § 636(b) includes "no clear requirement" for such service, "the court normally requests that the moving party do so, out of an abundance of caution."). Any party may file objections to the recommendations in this Report within fourteen days of being served with a copy. *See* 28 U.S.C. § 636(b).

Dated: November 4, 2016

JOSEPH C. SPERO
Chief Magistrate Judge

11